UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN KIEFER,

    Petitioner,

v.

A. HEDGPETH, warden,

    Respondent.
                              /

No. C 09-2640 MHP (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

John Kiefer filed this pro se action for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision. This matter is now before the court for consideration of the merits of the petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Kiefer is serving a sentence of 25 years to life in prison following a 1998 conviction for sale and/or transportation of a controlled substance with sentence enhancement allegations for prior convictions. His habeas petition does not challenge that conviction, but instead challenges a 2008 prison disciplinary decision that resulted in a time credit forfeiture. Kiefer contends that his due process rights were violated in that the disciplinary hearing was conducted by a biased decision-maker and the disciplinary decision was not supported by sufficient evidence.

On June 30, 2008, correctional staff correctional staff found two pills while searching a cell occupied by Kiefer and inmate Thompson at Salinas Valley State Prison. Serious rule violation reports (also known as RVRs or CDC-115s) were issued charging both inmates with possession of a controlled medication. See 15 Cal. Code Regs. 3016(d) ("Inmates shall not possess medication in quantities exceeding the dosage specifically authorized by the institution's/facility's health care staff, nor may an inmate possess medication prescribed to another inmate.")

Correctional officer ("C/O") Henley described the circumstances in the CDC-115. See Resp. Ex. 8 at AG01. AG04. Henley wrote that, when he approached and opened the cell door, inmate Kiefer was at the back of the cell and appeared to be startled. Kiefer had a clear plastic lid in his hand and Henley ordered him to put it down. Kiefer complied. Henley instructed him to back up to the door. Kiefer picked up the bowl into which he had put the plastic lid and walked toward the door with the bowl. Kiefer then complied with orders to put down the bowl, and was removed from the cell. Henley "conducted a clothed body search with negative results for any contraband." Id. at AG01. Kiefer was searched again at another location – also with negative results. Henley searched the cell and noticed "a clear plastic lid containing a white flaky substance (white substance resembled methamphetamines) inside of the bowl." Id. at AG01. Henley wrote that he believed that Kiefer intended to hide the substance in the bowl and exit his cell with it. Id. at AG04. That "flaky substance" – which Kiefer contends was seasoning – was not the substance that resulted in the discipline. Instead, it was something else that was found, according to C/O Henley:

> While searching the top of the lower locker (common area within the cell), I saw two pills that looked as if they had been "CHEEKED" (hidden in ones mouth in order to transport). I then contacted Facility "A" Medical Staff Registered Nurse M. Ayaay, regarding the identification of these pills. R.N. Ayaay informed me that the pills were 30 mg. of Morphine, a Controlled Medication. A review of both Inmate THOMPSON and KEIFER'S Medical Records were reviewed indicating that neither one of these inmates were prescribed Morphine. Therefore, they should not have been in possession of that type of Controlled Medication.

Id. at AG04.

Later, a registered pharmacist at the prison wrote a memo that identified the two pills as "Morphine SR 30 mg" and stated that the drug was "a schedule II pain medication and it is a 'DOT' med. These two patients do not have Morphine SR 30mg on their medication profile." Resp. Ex. 10.

A disciplinary hearing was held on or about August 7, 2008 at which correctional lieutenant J. Stevenson was the hearing officer. See Resp. Ex. 8 at AG01. At the hearing, Kiefer pled not guilty. He denied knowing that the pills were in the cell, and said the white substance in the lid was seasoning. He further said that his cellmate had found the pills in the shower and he (Kiefer) only learned about them after he received the CDC-115. Kiefer also pointed out that he had taken a urine test that was "clean," which he argued showed that he did not take morphine. See Resp. Ex. 8 at AG02. Kiefer's cellmate, inmate Thompson, testified that Kiefer did not know that he (Thompson) had brought the pills into the cell. Id. (At his own hearing earlier that day, Thompson pled guilty and stated that he had found the pills wrapped up in toilet paper in the shower the day before and took them back to the cell not knowing what they were. See Petition Ex. A at Appx. 3.)

Kiefer was found guilty of a violation of 15 Cal. Code Regs. § 3016(d), possession of controlled medication. The discipline imposed included a forfeiture of 121 days of time credits, 40 hours of extra duty, and a one-year placement in the random mandatory drug testing program. Hearing officer Stevenson wrote that his findings were based on the information in the CDC-115 written by C/O Henley and the pharmacist's memorandum. See Resp. Ex. 8 at AG03.

Kiefer filed unsuccessful inmate appeals. He then filed unsuccessful petitions for writ of habeas corpus in the state courts. The Monterey County Superior Court rejected Kiefer's state habeas petition in a short but reasoned decision. The California Court of Appeal and the California Supreme Court denied his habeas petitions without comment.

## DISCUSSION

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams (Terry) v. Taylor, 529 U.S. 362 (2000).

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. See Sandin v. Conner, 515 U.S. 472, 484, 487 (1995). The process due in such a prison disciplinary proceeding includes written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974). The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that a prison comply with its own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994).

A. Sufficiency Of The Evidence

The revocation of good-time credits does not comport with the minimum requirements of procedural due process in Wolff unless the findings of the prison disciplinary decision-maker are supported by some evidence in the record. Superintendent v. Hill, 472 U.S. 445, 454 (1985). There must be "some evidence" from which the conclusion of the decision-maker could be deduced. Id. at 455. An examination of the entire record is not required nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary decision-maker. Id. This standard is considerably lower than that applicable in criminal trials. Id. at 456. The Ninth Circuit additionally has

4

held that there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions. Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987).

The evidence relied upon by the hearing officer in finding Kiefer guilty of possession of controlled medication, a violation of 15 Cal. Code Regs. § 3016(d), meets Superintendent v. Hill's "some evidence" standard. The state court correctly identified the "some evidence" standard as the standard for judicial review and reasonably applied it. See Resp. Ex. 3 at 1-2. The state court explained:

> The SHO's [senior hearing officer's] decision is supported by some evidence. Among other things, the SHO found that the two pills were discovered in an area accessible to both cellmates and a pharmacist verified the pills were morphine. (In re Zepeda, 141 Cal. App. 4th 1493, 1499 [evidence that razor blade located in open area accessible to both cellmates enough to sustain prison rule violation but not criminal conviction]); 15 CCR § 3290(h).

Resp. Ex. 3 at 2 (first bracketed material added).

Kiefer's arguments here – that he did not know the pills were in the cell, that his cellmate took responsibility for the pills, that the pills were in a common area, that his urine test was "clean" – do not aid Kiefer because this court does not re-weigh the evidence in evaluating whether the "some evidence" standard is met. Here, the evidence included C/O Henley's written description of the incident in the CDC-115 in which he described finding the pills in a common area of the cell, and that a nurse identified the pills as morphine and determined that neither inmate had a prescription for morphine. The evidence also included a memorandum from the pharmacist identifying the pills as a morphine, a controlled substance, for which neither inmate in the cell had a prescription. The evidence satisfies the "some evidence" requirement. Kiefer did offer evidence and argument in his defense, but the fact that an inmate offered a defense did not mean that the hearing officer had to accept it as true. The fact that the cellmate admitted possession of the pills did not logically eliminate liability for Kiefer, as both may have constructively possessed the pills. The fact that the pills were found in a common area in the cell makes this case factually analogous to Superintendent v. Hill, where the Supreme Court stated the evidence was sufficient to support the discipline even though the correctional officer did not see which of three inmates

5

assaulted another inmate and only saw three inmates departing the area after hearing a commotion. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Superintendent v. Hill, 472 U.S. at 445. Kiefer's facts parallel those in the case on which the superior court relied, In re. Zepeda, 141 Cal. App. 4th 1493, where the court explained that, under Superintendent v. Hill's some evidence standard, a disciplinary decision would be upheld even if the reviewing court thought there was "a realistic possibility" that the inmate was not guilty so long as there was some evidence that he was. See Zepeda, 141 Cal. App. 4th at 1498.

> Zepeda's reliance on the evidence that supports his assertion not to have known about the razor blades, such as his cellmate's acknowledgement of ownership and Zepeda's own claim of innocence, does not change the analysis under Hill. Hill emphasizes that the reviewing court is not to engage in an "examination of the entire record" or "weighing of the [conflicting] evidence." ( Hill, supra, 472 U.S. at p. 455, 105 S.Ct. 2768.) Rather the narrow role assigned to the reviewing court is solely to determine whether there is " any evidence in the record that could support the conclusion reached by the disciplinary board." ( Id. at pp. 455-456, 105 S.Ct. 2768, italics added.) Here, there is such evidence, even if, as Zepeda contends, there is other evidence that supports his assertion of innocence.

Zepeda, 141 Cal. App. 4th at 1499. Likewise, although the evidence may have led to another result for Kiefer, the evidence to support the disciplinary decision was constitutionally sufficient and reliable. Kiefer's right to due process was not violated by prison officials' decision to find him guilty. The state court's rejection of his claim was not contrary to or an unreasonable application of clearly established federal law. He is not entitled to the writ of habeas corpus.

B.    Biased Decision-Maker Claim

Although Wolff did not address the requirement of an impartial decision-maker, the court will assume for purposes of argument that such protection exists for disciplinary hearings. A "'fair trial in a fair tribunal is a basic requirement of due process.' . . . This applies to administrative agencies which adjudicate as well as to courts." Withrow v. Larkin, 421 U.S. 35, 46 (1975) (citations omitted) (combination of investigative and adjudicative functions does not necessarily show a biased decision-maker); see also Morrissey v. Brewer, 408 U.S. 480, 489 (1972) (due process requires neutral and detached decision-maker for parole revocation hearing).

Kiefer contends that the hearing officer had "a predisposition of Petitioner's guilt and

was not an impartial decision maker." Petition, p. 8. Kiefer argues that the partiality is shown by the fact that the hearing officer had just held a hearing for his cellmate and found the cellmate guilty, as well as by the fact that the evidence did not support the finding of guilt. See id. This "proof" falls far short of demonstrating a biased decision-maker. Bias is not shown simply by the fact that the decision-maker adjudicated both disciplinary charges. Cf. Ortiz v. Stewart, 149 F.3d 923, 938 (9th Cir. 1998) (no inherent constitutional problem with the same judge presiding over separate trials of co-defendants). The offense with which both cellmates were charged as not one that had a mutually exclusive nature, because they both could have constructively possessed the pills. Kiefer's other argument – that bias is shown because the hearing officer found him guilty – is just a reformulation of the challenge to the sufficiency of the evidence, and that claim was rejected above. Further, adverse rulings alone almost never constitute a valid basis for a bias or partiality challenge. Cf. Liteky v. United States, 510 U.S. 540, 555 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") The claim fails.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: January 11, 2011

Marilyn Hall Patel
United States District Judge